## ASTOR v. MERRITT, Collector.

IN ERROR TO·THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

Argued March 21st, 24th, 1884.—Decided April 7th, 1884.

*Customs Duties—Wearing Apparel.*

A citizen of the United States, arriving home from a visit to Europe, with his
family, in the end of September, by a vessel, brought with him wearing
apparel, bought there for his and their use, to be worn here during the season
then approaching, " not excessive in quantity for persons of their means,
habits and station in life," and their ordinary outfit for the winter. A part
of the articles had not been worn, and duties were exacted by the collector
on all those articles : *Held,* That, under § 2505 of the Revised Statutes
(now § 2503, by virtue of § 6 of the act of March 3d, 1883, chap. 121, 22
Stat. 521), exempting from duty " wearing apparel in actual use and other
personal effects (not merchandise), . . . of persons arriving in the
United States," the proper rule to be applied was to exempt from duty such
of the articles as fulfilled the following conditions: (1) Wearing apparel
owned by the passenger, and in a condition to be worn at once without
further manufacture; (2) brought with him as a passenger, and in-
tended for the use or wear of himself or his family who accompanied him
as passengers, and not for sale, or purchased or imported for other persons,
or to be given away; (3) suitable for the season of the year which was im-
mediately approaching at the time of arrival; (4) not exceeding in quantity
or quality or value what the passenger was in the habit of ordinarily
providing for himself and his family at that time, and keeping on hand for
his and their reasonable wants, in view of their means and habits in life,
even though such articles had not been actually worn.

This was a suit to recover back duties alleged to have been
illegally exacted on the wearing apparel of a passenger enter-
ing at the port of New York. The facts which make up the
case are stated at length in the opinion of the court. The
plaintiff in error was plaintiff below.

*Mr. George De Forest Lord* for plaintiff in error.

*Mr. Solicitor-General* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This suit was brought by William Astor, in a court of the
State of New York, and removed into the Circuit Court of the

United States for the Southern District of New York, to recover the sum of $1,880 paid to the defendant, as collector of the port of New York, by the plaintiff, for customs duties, on the 22d of September, 1878, on certain goods brought by the plaintiff with him from Liverpool, as a passenger in a vessel. The goods and the duties exacted were as follows, the items of the goods not being more particularly set forth in the record: 45 lbs. wool and worsted wearing apparel, at 50 cents per pound, $22.50, and 40 *per cent.* on its value at $990, $396, amounting to $418.50; cotton wearing apparel, 35 *per cent.* on its value at $150, amounting to $52.50; leather gloves, 50 *per cent.* on their value at $250, amounting to $125; and silk wearing apparel, 60 *per cent.* on its value at $2,240, amounting to $1,284; being a total of $1,880. The plaintiff recovered a verdict for $737, with interest from September 22d, 1878, on which he had a judgment. He has brought a writ of error, claiming that he was entitled to recover the entire $1,880, on the ground that the goods were exempt from duty under § 2505 of the Revised Statutes, p. 489, 2d ed., which provides that the importation of the following articles shall be exempt from duty : " Wearing apparel in actual use and other personal effects (not merchandise), professional books, implements, instruments, and tools of trade, occupation, or employment, of persons arriving in the United States. But this exemption shall not be construed to include machinery, or other articles imported for use in any manufacturing establishment, or for sale."

At the trial, in October, 1880, the plaintiff testified in his own behalf, that, in the summer of 1878, he, a citizen of the United States, was travelling in Europe with his wife, three daughters and son, also citizens of the United States, and returned to this country with them, arriving in New York, by a steamer, on September 22d, 1878; that he had in his personal baggage certain articles of wearing apparel, being the goods above mentioned, belonging to himself and other members of his family, purchased in Europe during that summer, on which the duties above mentioned were exacted, and that they were paid in order to get possession of the wearing apparel; that

the articles belonged to him and were intended for the personal use of himself and his said family; that the articles for his own and his son's use were such articles of wearing apparel as they ordinarily wore at that season of the year; that they were principally intended for use in the winter, and were in no sense imported by him as merchandise; that some of his own and his son's wearing apparel had been actually worn by them personally, and he explained that fact to the custom-house authorities at the time of the exaction of the duties; that the articles of wearing apparel of himself and his son were purchased by him with the intention of using them wherever he and his family might be; that he did not know, when he purchased them, how long he was going to remain abroad; that, when they were purchased at Paris and sent home, they were placed in with their other wearing apparel, so as to form part of their ordinary wardrobes; that, if they had been detained in Europe, the garments were such as they would have required the moment the weather grew cool; and that the articles were bought for use whenever the weather should make it proper to use them, and without reference to where he and his son should be at the time they encountered cold weather.

Mrs. Astor testified that the garments of ladies' wear contained in the baggage were generally dresses and cloaks of woolen, worsted and silk, and linens, intended entirely for her own and her daughters' use, and which had been purchased under her supervision in Paris; that such garments were intended for the separate and individual use of herself and daughters as soon as it was cold enough to wear them for the approaching season; that some were adapted for ordinary wear and some for balls and entertainments, and all were made upon measure; that the aggregate quantity of wearing apparel which formed part of the baggage of herself and daughters rather fell short of their usual supply of such articles for that season of the year; that she was obliged, after she arrived in this country, to have some dresses made; that none of the articles were purchased for sale or exchange, but only for the special use of the persons for whom they were made; that, when they were purchased and sent home from the persons

who made them, they were placed indiscriminately in with the wardrobe of the particular person for whom they were intended, so to form part of the personal wardrobe of such person at the time; that a great part of them had been worn before she returned to this country, but some few had not been worn, because there was no special occasion to wear them; that, if the party had been detained in Paris, and cold weather had suddenly come on, the articles were such as she and her daughters would have required for immediate use; that, if they had remained for the winter, or a month longer, they would have worn the dresses intended for entertainments; that, from the time when these articles were purchased, there was nothing to prevent their being put on and worn the moment a proper occasion for wearing them arrived; that the articles lasted during the fall and winter, until spring, and had been entirely consumed by use; that she thought there were four dresses that had not been worn, because there had been no occasion to wear them; that the party had intended, at the time the articles were purchased, to spend the winter in America, but, if their plans had been changed at all, they would have remained in Europe and worn the articles there; that they went to Europe in May or June, 1878, travelled through England and to Paris, then through the Continent and back to Paris; that most of the articles were ordered upon their first arrival in Paris, before travelling through the Continent, and were paid for on coming back; and that most of them (about half, perhaps) were ordered and worn before travelling through the Continent, because they were then needed.

It appeared in evidence that the examiner who appraised the dutiable articles in the plaintiff's baggage went upon the principle of including as dutiable articles those which seemed not to have been worn.

The plaintiff's counsel requested the court to charge the jury as follows: "1. The general purpose of the statute being to impose duties upon the importation of merchandise, the exemption of the wearing apparel of passengers is in accordance with that purpose, and the language providing for such exemption should have a wide and liberal interpretation. 2. The general pur-

pose of exempting passengers' baggage being as much in harmony with the statute as the general purpose of imposing duties on merchandise, all language, which seems to bring such baggage within the same category with merchandise should be strictly construed against the government, and all language tending to keep up the distinction should be liberally·construed in favor of the citizen. 3. The words 'not merchandise,' in the clause of the statute now in question, relate to the words 'wearing apparel in actual use,' as well as to the words 'personal effects,' and the clause might properly be paraphrased as if it read 'wearing apparel in actual use (not merchandise), and personal effects (not merchandise.)' 4. The words 'not merchandise,' thus used, may properly be regarded as explaining and defining the words 'in actual use,' and the clause may be rightly construed as if those were synonymous or correlative terms. 5. If, therefore, this wearing apparel was 'not merchandise,' it was 'in actual use,' within the statutory meaning of that term, and was, therefore, exempt. 6. The words 'in actual use,' not being scientific or technical words, should be applied in the common and ordinary sense in which they would be generally employed. If, therefore, this wearing apparel, under the circumstances disclosed in the testimony, would be generally and ordinarily described as being in actual use of the plaintiff and his family, then it should have been admitted duty free. 7. The words 'in actual use' do not mean 'in actual, immediate, personal use' at the moment, but must have a meaning somewhat more extended than that. The statute clearly shows that some wearing apparel intended for and awaiting use in a passenger's trunks, as well as that upon his person at the time, is to be admitted free. 8. If the words 'in actual use' were intended (as they clearly were) to embrace some wearing apparel which was only intended for, and awaiting, use, in the passenger's trunks, there is nothing in the statute which shows an intention to exclude any wearing apparel so situated, and, consequently, all such wearing apparel should be admitted free, provided the other requirements of the statute are fulfilled, viz., that it is 'not merchandise,' and belongs to the passenger. 9. Wearing apparel is properly and

strictly 'in actual use' from the time when its use by its owner begins until it is finally consumed or worn out.   10. The use of wearing apparel which is purchased for the immediate personal comfort of the owner may be properly said to begin from the time when it is sent home from the maker and takes its place, ready for wear, in the owner's wardrobe.   If these articles were in that condition, they were 'in actual use,' within the statute, and should have been admitted free.   11. There is nothing in the statute to indicate that 'wearing apparel' must be worn once or twenty times before it can be said to be 'in actual use,' and the jury is not bound by any such test, in determining whether these articles were 'in actual use' when the plaintiff arrived here, in September, 1878.   12. Wearing apparel suitable for the season of the year which is approaching at the time, not exceeding in quantity what the owner would ordinarily provide for himself and keep on hand for his reasonable wants, and purchased for his own use, as occasion may require, may be properly said to be 'in actual use,' within the meaning of the statute, from the time when they come into the owner's hands and are placed in his wardrobe, to be worn whenever the proper occasion arrives, and, if these articles come within that test, they should have been admitted free.   13. The terms 'in actual use,' as employed in the statute, are substantially equivalent to the words 'in present use,' including, in their meaning, not merely a reference to the actual present, but to so much of the immediate future as a person would ordinarily provide for in his every-day wardrobe, and if, in this sense, these articles were 'in actual use,' they were exempt from duty.   14. All the necessities of modern civilization require that every person should continually renew his wardrobe, as articles are worn out.   Whatever is purchased for that purpose passes into 'actual use' the moment it is sent home and placed by the owner among the other articles which form his present wardrobe; and if these articles were in that category, they were exempt from duty."   The court refused to charge in accordance with any of these requests, and the plaintiff excepted to each and every such refusal.

The court then charged the jury as follows, and the plaintiff

excepted to the parts which are in brackets: "Certain facts are admitted or have been proved: (1.) There was no evasion or concealment of the amount, or value, or character, and use or no use, of the goods by the plaintiff, and there is no complaint of any departure from courteous treatment by the defendant's officers. (2.) There is no dispute in regard to the value of the articles. (3.) It is not denied that the clothing was to be used by the defendant's family, in this country, during the season then approaching, and was not excessive in quantity for persons of their means, habits and station in life, and was their ordinary outfit for the winter. (4.) That a part of the articles had not been worn, and that all were bought for use, and to be worn in this country, if the plaintiff's plans for a speedy return should be carried into effect. The main question in the case, and to obtain an answer to which this suit was brought, is whether, under the foregoing facts, the unworn articles were legally free from duty, as wearing apparel 'in actual use;' in other words, to ascertain the proper definition of the phrase or term 'in actual use.' The plaintiff insists that wearing apparel, suitable for the season of the year just approaching at the time, not exceeding in quantity what the owner would ordinarily provide for himself and keep on hand for his reasonable wants, and purchased for his own use, as occasion might require, may be properly said to be in 'actual use,' within the meaning of the statute, from the time when they come into the owner's hands, and are placed in his wardrobe, to be worn whenever the proper occasion arrives. It is our duty to ascertain, if possible, the intention of the legislature, from the language which is used, and ordinarily to give to the language its natural signification. In my opinion, by limiting the exemption from duty of travellers' wearing apparel to that 'in actual use,' Congress meant to say, that new and unused wearing apparel purchased in a foreign country, not for present use, but for prospective use in this country, though that prospective use might be in the near future, should pay duty; and that it is not the right of travellers to have new and unused wearing apparel which has been purchased abroad, not for use abroad, but for use upon their return to this country, admitted free of duty.

I, therefore, limit the exemption, in general, [to wearing apparel which had been actually used, as such, before the arrival of the owner in this country], and define ['wearing apparel, actually in use (not merchandise),' to mean wearing apparel bought for personal use and not for sale, which has been really subjected to use in the way in which that particular wearing apparel is ordinarily used]. Apparel bought in a foreign country not for present use, but for the purpose of anticipated use in this country, and not actually subjected to use in a foreign country, for the purpose for which it was procured, but put upon the person as a colorable device to escape duties, is not within the exemption of the statute. Some exceptional cases have been cited by the learned counsel for the plaintiff; and, in view of such cases, I may also say, that the term also includes wearing apparel which has been purchased for the purpose and with the *bona fide* and not colorable intent of an actual, present, personal wear and subjected to use in a foreign country or in transit, and not merely for prospective use in this country, although said apparel may not actually have been used abroad. The last clause of the definition is not pertinent, as I understand the testimony, to the case on trial. Under this construction of the statute, [the unworn goods of the plaintiff were not exempt]. The apparel which had been worn, it not having been claimed that such wearing was colorable or took place in any other than the ordinary way in which clothing is subjected to use, was exempt. And this brings me to the question of fact, which is for the determination of the jury, whether any part of the assessed goods, and, if so, how much, had been worn."

The court then commented on the testimony as to what articles had been worn and what had not been worn, and added : " Your duty is to examine the testimony on both sides and ascertain whether the plaintiff has proved that any, and, if so, how many, of his worn articles were assessed for duty. The amount, if anything, which he has overpaid is the measure of the defendant's liability." " I suppose it is conceded that some were not worn. The amount, if anything, which he has overpaid, that is, the amount, if anything, which he has paid

upon worn goods, is the measure of the defendant's liability."

The parts of the charge excepted to were these: (1.) That, although the clothing in question was confessedly not excessive in quantity for persons of the means, habits, and station in life of the plaintiff and his family, and was their ordinary outfit for the winter, the exemption of wearing apparel from the payment of duty was limited "to wearing apparel which had been actually used as such before the arrival of the owner in this country." (2.) That the terms "wearing apparel in actual use, (not merchandise)," as contained in the statute, "meant wearing apparel bought for personal use, and not for sale, which has been really subjected to use in the way in which that particular wearing apparel is ordinarily used." (3.) That "the unworn goods of the plaintiff" in this case were not exempt.

By § 46 of the act of March 2d, 1799, chap. 22, 1 Stat. 661, it was provided, that "the wearing apparel, and other personal baggage, and the tools or implements of a mechanical trade only, of persons who arrive in the United States, shall be free and exempted from duty;" and a separate entry of such articles was required, with an oath that the packages contained no goods other than "the wearing apparel and other personal baggage" and tools, and were not directly or indirectly imported for any other person or intended for sale.

By § 2 of the act of April 27th, 1816, chap. 107, 3 Stat. 313, it was declared that the following articles should be imported into the United States free of duties, that is to say, "wearing apparel and other personal baggage in actual use, and the implements or tools of trade of persons arriving in the United States."

This continued to be the language in § 1 of the act of September 11th, 1841, chap. 24, 5 Stat. 463, and until § 9 of the act of August 30th, 1842, chap. 270, id. 560, was enacted, which introduced the language now found in the first clause of the paragraph above cited from § 2505 of the Revised Statutes, which language was repeated in Schedule 1 of § 2 of the act of July 30th, 1846, chap. 75, 9 Stat. 49, with the addition of what is now found in the second clause of said paragraph; and

the whole appears again in § 3 of the act of March 3d, 1857, chap. 98, 11 Stat. 193, and in § 23 of the act of March 2d, 1861, chap. 68, 12 Stat. 193, from which it was transferred to the Revised Statutes. Although the description of what is so exempt is thus changed from what it was in § 46 of the Act of 1799, the Revised Statutes require, in § 2799, the same oath on entry which was so required by the act of 1799, and state that it is required "in order to ascertain what articles ought to be exempted as the wearing apparel and other personal baggage, and the tools or implements of a mechanical trade only, of persons who arrive in the United States."

The course of legislation is thus seen to have been, to exempt from duty, in 1799, "wearing apparel and other personal baggage;" in 1816, "wearing apparel and other personal baggage in actual use;" "in 1842, wearing apparel in actual use and other personal effects (not merchandise);" and in 1846, and thenceforward, the same articles as in 1842, with the limitation as to excluding from the exemption articles imported for sale. The enactment in question is repeated in the statute now in force, as § 2503 of the Revised Statutes, by virtue of § 6 of the act of March 3d, 1883, chap. 121, 22 Stat. 521. The question raised is, therefore, one of continuing importance and interest, under the customs laws.

It is quite apparent that the Circuit Court finally applied to the plaintiff's wearing apparel the test of whether the given article had been bought for personal use and not for sale and had also been worn, and subjected it to duty unless it had been actually worn. The court refused to give the 12th instruction, which it stated to be, that the articles of apparel suitable for the season of the year just approaching at the time, not exceeding in quantity what the owner would ordinarily provide for himself and keep on hand for his reasonable wants, and purchased for his own use as occasion might require, may be properly said to be "in actual use," within the meaning of the statute, from the time when they come into the owner's hands and are placed in his wardrobe, to be worn whenever the proper occasion arrives, and, if the articles in question came within that test, they should have been admitted free. The court very properly

said, that putting upon the person an article of apparel as a colorable device to escape duties, was not wearing it or an actual use of it, in the sense of the statute.   It further said, that the term "in actual use" also includes wearing apparel which has been purchased for the purpose and with the *bona fide* and not colorable intent of an actual, present, personal wear and subjected (subjection?) to use in a foreign country or in transit, and not merely for prospective use in this country, although said apparel may not actually have been used abroad. But it added, that this last clause of the definition was not pertinent, as it understood the testimony, to the case on trial.   The court, however, in all it said, limited the exemption from duty as not including new and unused wearing apparel purchased abroad not for present use but for prospective use in this country in the near future.   While it said that the exemption might include what had been bought for the purpose and with the *bona fide* and not colorable intent of actual present wear abroad or in transit, and not merely for prospective use here, although not actually used abroad, it said that the latter clause did not apply to this case, because the wearing apparel in question was bought to be worn here, as an outfit for the winter.

It is contended here, for the defendant, that unworn wearing apparel, purchased for an approaching season, cannot be exempt from duty, as "in actual use," before that season has arrived, while wearing apparel proper for the season of arrival from abroad may, unless there is a want of good faith, be considered as "in actual use," whether it has been already used or not.

We are of opinion that the court should have given a different construction from that which it gave to the statute, as applicable to the facts of this case.   If the articles in question fulfilled the following conditions, and were (1) wearing apparel owned by the plaintiff and in a condition to be worn at once without further manufacture; (2) brought with him as a passenger, and intended for the use or wear of himself or his family who accompanied him as passengers, and not for sale, or purchased or imported for other persons, or to be given away; (3) suitable for the season of the year which was immediately approaching at the time of arrival; (4) not exceeding in quan-

tity or quality or value what the plaintiff was in the habit of ordinarily providing for himself and his family at that time, and keeping on hand for his and their reasonable wants, in view of their means and habits in life; they were to be regarded as "wearing apparel in actual use," of a person arriving in the United States, even though they had not been actually worn.

If a person residing in the United States should purchase wearing apparel here, in a condition ready for immediate wear without further manufacture, intended for his own use or wear, suitable for the immediately approaching season of the year, and not exceeding in quantity, quality or value the limit above mentioned, no one would hesitate to say that such wearing apparel was "in actual use" by such person, even though some of it might not have been actually put on or applied to its proper personal use. The word "actual," in the lexicon, has as a meaning "real," as opposed to "nominal," as well as the meaning of "present." "In use" is defined to be "in employment;" "out of use" to be "not in employment;" "to make use of, to put to use" to be "to employ, to derive service from." These definitions aid in showing that it is too narrow a construction of the words "in actual use," as applied to this case, to say that they require that the wearing apparel should have been actually worn.

It is manifest, that, by the words "in actual use," Congress did not intend that those words should be limited to wearing apparel on the person at the time. They must have a more extended meaning. The test of having worn the article, as a criterion whether it is "in actual use," is arbitrary, and without support in the statute. An article of wearing apparel, bought for use, and appropriated and set apart to be used, by being placed in with, and as a part of, what is called a person's wardrobe, is, in common parlance, in use, in actual use, in present use, in real use, as well before it is worn as while it is being worn or afterwards. The test of wearing must, therefore, be rejected. What test shall be adopted? We are aided by the other language of the statute, in saying, that the articles must be "personal effects," and must not be "merchandise," and must not be "for sale." These words of limita-

tion, on the one hand, serve to indicate that, on the other, if the articles, being wearing apparel of the arriving passenger, are fairly personal effects of his, and not merchandise, and not for sale, a construction of the words "in actual use" is to be sought for which will carry out the spirit and intent of the entire provision of the statute, and, while it comports with the ordinary habits of passengers and travellers, will not open the door for fraud. Such a construction we believe that one to be which we have laid down for a case like the present. As regards citizens of the United States returning from abroad, and foreigners visiting this country, it cannot be supposed that Congress intended they should have worn all the wearing apparel they bring, or else pay duty on it ; or that they shall not bring with them, free of duty, wearing apparel, not worn, bought in good faith for personal use in the immediately coming season, and not unsuitable in quantity or quality or value. "Persons arriving in the United States" are citizens returning or foreigners visiting or emigrating. The statute applies to all equally. If, as the result of our construction of the law, it shall happen that citizens returning from abroad may obtain, as to their personal wardrobes, a pecuniary advantage over citizens who remain at home, that is but an incidental advantage attendant on the opportunity to go abroad. If foreigners visiting or emigrating are not compelled to pay duties on their unworn wearing apparel, it is merely exempting them from a tax the imposing of which has a tendency to induce them to remain abroad. The words "in actual use" require no such construction, and, under the guarded rule we have laid down, the government will, on the one hand, not lose any revenue which the statute intends to give it and does give it, and persons arriving from abroad will be enabled to bring with them their usual and reasonable wearing apparel in actual use, without being required to have worn it before landing.

As appears by the record in this case, the Treasury Department, in heretofore making regulations for the conduct of the officers of the customs, as to the exemption of wearing apparel, promulgated the following, which were in force from 1857 to 1875: "Such exemption of wearing apparel cannot be

without limit as to the character and quantity of the articles which are to be admitted to free entry; and it is for the department or its officers to determine whether articles for which exemption is claimed are entitled thereto under a reasonable construction of the law. The rule by which the department usually determines the dutiable or free character of wearing apparel in such cases is as follows: 1st. Did the owner visit the foreign country for the purpose or with the direct intention of purchasing the article or articles? 2d. Were the articles intended for the sole use of the person purchasing the same? 3d. Was such purchase actually necessary for the health cr comfort of the person or persons purchasing the same? These questions must be answered under oath." On the 23d of February, 1875, as we learn from public documents, other regulations were prescribed, which were in force at the time of the present transaction, as follows: "So far as wearing apparel is concerned, only those articles which have been in actual use are exempted from duty, although in many cases this exemption has been applied to all articles of wearing apparel belonging to and contained in the baggage of the owner, whether new or old. New articles of clothing, which have not been in actual use abroad, and not necessary for the present comfort or convenience of the owner, are chargeable with duty; and the fact that they are intended for the future use of the person who brings them, or of another person, and are not for sale, does not exempt them from duty." It is, doubtless, impossible, under the statute, to formulate a general rule which will apply to every case. The law must have a reasonable construction in reference to cases as they arise.

*The judgment of the Circuit Court is reversed, and the case is remanded to that court, with direction to award a new trial.*