MUELLER ET AL. *v.* UNITED STATES (No. 2804)[1]

United States Court of Customs Appeals, April 4, 1927

*H. M. Cooley* for appellants.

*Charles D. Lawrence,* Assistant Attorney General (*Jerome G. Clifford,* special attorney, of counsel), for the United States.

[Oral argument January 24, 1927, by Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Merchandise, consisting of hogs, live poultry, one buggy harness, one cream separator, certain household goods, and eight horses, was imported into the United States from Canada. The horses were assessed for duty by the collector at $30 per head under paragraph 714 of the Tariff Act of 1922, which reads as follows:

PAR. 714. Horses and mules, valued at not more than $150 per head, $30 per head; valued at more than $150 per head, 20 per centum ad valorem.

It was claimed in the protest that the horses were free of duty under paragraph 1507:

PAR. 1507. Animals brought into the United States temporarily for a period not exceeding six months, for the purpose of breeding, exhibition, or competition

---

[1] T. D. 42138.

for prizes offered by any agricultural, polo, or racing association; but a bond shall be given in accordance with regulations prescribed by the Secretary of the Treasury; also teams of animals, including their harness and tackle, and the wagons or other vehicles actually owned by persons emigrating from foreign countries to the United States with their families, and in actual use for the purpose of such emigration, under such regulations as the Secretary of the Treasury may prescribe; and wild animals and birds intended for exhibition in zoological collections for scientific or educational purposes, and not for sale or profit.

It appears from the evidence introduced on the trial below that the horses were owned by appellants and used by them in farming certain rented lands in Canada; that as the owners of the Canadian farms furnished the necessary wagons, harness, farming machinery, and tools, appellants were not the owners of wagons and harness, except so-called buggy harness, at the time of the importation of the merchandise; that appellants emigrated to the United States, and, as they wished to keep the horses, they were shipped by rail from Kelso, Saskatchewan, Canada, to Jonesboro, Ark., and entered at the port of Pembina, N. Dak.; and that they were thereafter owned and used by appellants in the farming of lands in the United States.

The court below held, Adamson, Associate Justice, dissenting, that, as the horses were not in actual use at the time of emigration and for that purpose, they were not entitled to free entry. The protest was, therefore, overruled.

It is claimed by appellants that, as appellants were emigrating to the United States at the time of importation, and that, as the horses were owned by them prior to and at the time of importation, and as they had been used by them in the farming of lands in Canada, and as they were imported for the purpose of such use in the United States and not for sale, they were entitled to free entry under paragraph 1507, although they were not used for the purpose of transporting the appellants or their goods in the act of emigration. It is claimed that the decisions in the following cases support the contention of appellants: *Astor* v. *Merritt*, 111 U. S. 202; *Arthur* v. *Morgan*, 112 U. S. 495; *Schlesinger* v. *Beard*, 120 U. S. 264.

It is contended by the Government that paragraph 1507 is not open to the construction claimed by appellants; and that the decision below is consistent with judicial constructions of similar, if not identical, statutes in prior tariff acts—paragraphs 642 of the act of 1883, 483 of the act of 1890, 374 of the act of 1894, 474 of the act of 1897, 493 of the act of 1909, and 398 of the act of 1913.

In T. D. 12956, G. A. 1507, the Board of General Appraisers (now United States Customs Court) had under consideration paragraph 483 of the tariff act of 1890, the pertinent part of which read as follows:

PAR. 483. * * * teams of animals, including their harness and tackle, and the wagons or other vehicles actually owned by persons emigrating from foreign

countries to the United States with their families, and in actual use for the purpose of such emigration, * * *

Certain horses were imported at the port of Pembina, N. Dak. They were not in actual use by appellants to assist them in the act of emigrating to the United States. It was there claimed, however, that as the horses were actually owned by appellants prior to importation, and as appellants were emigrating from Canada to the United States, the horses were entitled to free entry under the provisions of paragraph 483.

In its decision overruling the protests, the court said:

The manifest purpose of the law is to meet the case of immigrants of limited means from contiguous foreign territory, who would resort to the most convenient and economical mode practicable for transporting themselves, their families, and their household effects from the place of departure to their destination in this country. Such appears to have been the construction placed upon this provision, which is the same as contained in the previous acts, by the Treasury Department in repeated decisions prior to October 1, 1890.

We hold, in accordance with the foregoing, that the action of the collector was right in the assessment of duty upon the horses and harness in question, and hence we overrule the protests.

In construing identical language in paragraph 493 of the tariff act of 1909, the same court, in T. D. 31706, G. A. 7236, said:

The facts of this case do not at all conclusively show that the automobile in question was in any way used for the purpose of emigration, but, if it was, we think that a proper construction of this paragraph of the law would not grant free entry to wagons, or any other kind of vehicles, unless the same were drawn by animals, as the paragraph in our judgment was intended only to include within its scope animals and such harness and vehicles as are used therewith.

Other cases have been decided by that court in conformity to the cited decisions. We have been unable to find any decision which supports the construction desired by appellants.

We do not desire to be understood as holding that, in order to come within the provisions in question, the animals would necessarily have to be driven across the border in the act of transporting the emigrant, his family, and luggage. The Customs Regulations of 1923 are far more liberal and seem to us to be consistent with the purpose of the Congress.

The latter part of article 216 of the Customs Regulations of 1923 reads as follows:

ART. 216. * * * Horses, with their harness, wagons, and other vehicles owned by immigrants and used by them for the transportation of themselves and luggage to a railway station, and then shipped to the United States, where they are again used by such immigrants to reach their destination, are entitled to entry free of duty.

The horses must not only be owned by the persons emigrating to the United States but they must be "in actual use for the purpose of such emigration" at the time of entry.

If the language, "the purpose of such emigration," should be interpreted to mean the purpose for which the person emigrated to the United States—in this case to engage in the occupation of farming—it would be impossible to comply with the mandate of the statute, because, obviously, horses could not be "in actual use for the purpose of such emigration"; that is, farming, at the time of entry. Had the Congress intended to extend free entry to animals under such conditions, it would have been easy to have said "and to be used for the purpose for which such emigrant emigrated." The Congress did not so provide.

In order to come within the statute the horses must be in actual use for the purpose of emigrating.

Counsel for appellants have cited the case of *Astor* v. *Merritt*, 111 U. S. 202, and contend that the construction there placed upon the words "in actual use" is controlling of the issue here.

In that case the Supreme Court was considering section 2505 of the Revised Statutes, page 489 (2d ed.), which provided that "wearing apparel in actual use and other personal effects (not merchandise), professional books, implements, instruments, and tools of trade, occupation, or employment, of persons arriving in the United States * * *," should be free of duty. The court held that the words "in actual use," when considered in connection with the context of the statute, were not intended to mean only such wearing apparel as was actually being worn at the time of importation, but were intended to include all such as were "personal effects," whether they were actually being worn on the person or not.

Of course the words "in actual use" must be interpreted in accordance with the context of the statute in which they appear.

The decision in the case of *Astor* v. *Merritt, supra,* is interesting in connection with but not controlling of the issue here.

It would seem to be authority, however, for the liberal construction placed upon paragraph 1507 by the Treasury Department in article 216, *supra.* It is not necessary under this construction that the horses be actually engaged in transporting the emigrant's family or luggage at the time of importation. If they are actually used by the emigrant for the purpose of *emigrating,* as provided by article 216 of the Customs Regulations, the shipping of them across the border would not violate the terms of the statute.

It is evident that the horses involved in this case were not used at all for the purpose of assisting appellants to emigrate to the United States.

The judgment is, therefore, *affirmed.*